IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA : CRIMINAL ACTION
:
v. : No. 1:11-cr-239-25-CAP-ECS
:
SONIA SANCHEZ :

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**I.**
**Introduction**

This matter is before the Court on Defendant's motion to suppress evidence [Doc. 341].[1] Specifically, Defendant seeks to suppress evidence in the form of cell phones, notebooks and certain other paper and documents seized on June 8, 2011, by law enforcement during a search of Defendant's residence made at the time Defendant was being arrested on a federal arrest warrant. The motion came on for evidentiary hearing on January 12, 2012. [Doc. 516].

Defendant contends that the evidence must be suppressed because the search exceeded the scope of Defendant's consent and because Defendant did not consent to the officers seizing anything from the

---

[1] Defendant also filed a "Motion to Suppress Money Seized on December 16, 2011." [Doc. 340]. At the hearing the government acknowledged that it would not be seeking to introduce any evidence from the seizure of money on December 16th, 2011. (T. 3-4). This motion to suppress, [Doc. 340], is therefore **DENIED** as **MOOT**. In addition, Defendant's motion to suppress intercepted communications [Doc. 339] was not particularized and is, therefore, **DENIED** as **ABANDONED**. (T. 4).

residence. As a corollary, Defendant argues that the plain view doctrine did not independently authorize the officers to seize the cell phones or the other documents sought to be suppressed because any incriminating or evidentiary character of the items seized was not immediately apparent at the time of seizure.

The government responds that the officers had general consent to search the house for "illegal items" and that, under the circumstances, the cell phones and other documents were seizable as contraband in a drug and money-laundering investigation. See Gov't Brief at 6-7.

**II.**
**Factual Background**

On June 8, 2011, Defendant Sonia Sanchez was arrested at her place of residence at 2369 Apalachee Cruis Lane, Dacula, Georgia, on a federal arrest warrant. (T. 6-7). Officer Miguel Henao, a fluent Spanish speaker, was with the team that made the arrest. His responsibility was to be the Spanish interpreter, to make the initial approach to the door where the arrest warrants were going to be served, and to make contact with the individuals in the house. (T. 6). Defendant answered the door along with another female, and Officer Henao identified himself, in Spanish, as a police officer. He asked the two women at the door, one of whom turned out to be Defendant, if it was okay for the officers to come in to talk to

2

them and explain to them what was going on and the reason for their being there. (T. 9-10). Defendant gave them permission to enter.

About three officers, including Officer Henao, initially entered the house. (T. 9). The officers asked if there was anyone else in the house, as they could see there were several other people present. (T. 10). Some of the people were people named in the arrest warrants. (T. 10). Defendant advised the two women at the door that the officers were looking for particular persons, including Defendant, and that they had arrest warrants. (T. 8). Defendant became very nervous when her name was mentioned and, at that point, officer Henao asked her for consent to search the residence. Officer Henao testified:

> I asked them if it was okay for us to search the residence to make sure there was nothing illegal in the house, no weapons, drugs or currency or anything that will harm any of the officers that were present at the location . . . .

(T. 11).[2] Officer Henao then followed up the request for oral consent with a request for written consent. He presented Defendant with a written consent form in Spanish. He presented it to Defendant because she said she was the person in control of the house. (T. 11). See Gov't Ex. 1, 2. Defendant signed the consent. (T. 12).

---

[2] Later in his testimony, Officer Henao testified again, consistently with his first response, that he specifically told Defendant that he wanted to search for "drugs, weapons – drugs, weapons and any weapon and any money or anything illegal inside the house." (T. 20).

3

AO 72A
(Rev.8/82)

To summarize, Defendant gave consent to search the house, both orally and in writing. (T. 15). She gave no express consent to seize any items in either consent. (T. 19). She was not Mirandized. (T. 15-16). She did, however, allow the agents to open a small safe that they found while they were searching. (T. 16). Apparently, no drugs or weapons were found in the house. (T. 17). A drug dog was brought into the house, but there was no evidence that the dog alerted. (T. 17). There were a total of eleven officers involved in the arrest and search. (T. 18).

### III.
### Discussion

**A. Scope of Consent to Search**

Defendant does not argue that she did not consent to the search of the house or that her consent was involuntary. Defendant argues that the search and seizure in this case exceeded the scope of the consent to search given by her. See Def's Brief at 7. In general, the scope of a consent search may not exceed the scope of the consent given. Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Street, 472 F.3d 1298, 1307-08 (11th Cir. 2006). In other words, "[a] consensual search is confined to the terms of its authorization." United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990) (citations omitted). A suspect's consent can impose limits on the scope of a search in the same way as do the

4

specifications of a warrant. See Mason v. Pulliam, 557 F.2d 426 (5th Cir. 1977).[3] Moreover, the government may not use consent to a search which was initially described as narrow as a license to conduct a more general search. United States v. Milian-Rodriquez, 759 F.2d 1558, 1563 (11th Cir. 1985).

The scope of consent is determined by "objective" reasonableness - asking how a typical reasonable person would have understood the exchange between the officer and the suspect when consent was given. Jimeno, 500 U.S. at 250-51; United States v. Harris, 928 F.2d 1113, 1118 (11th Cir. 1991). "To ascertain what conduct is within the 'bounds of reasonableness,' we must consider what the parties knew to be the object (or objects) of the search. . . . [C]onsent to search for specific items includes consent to search any [area] that might reasonably contain those items." United States v. Zapata, 180 F.3d 1237, 1243 (11th Cir. 1999).

**B. The "Plain View" Doctrine**

Under the 'plain view' doctrine, an officer may make a warrantless seizure where (1) he is lawfully located in the place from which the seized object could be plainly viewed and he also has a lawful right of access to the object itself; and (2) the

---

[3] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

5

incriminating character of the item is immediately apparent. Horton v. California, 496 U.S. 128, 136-37 (1990); United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006). "The plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located." United States v. Rodgers, 924 F.2d 219, 221 (11th Cir. 1991) (citation omitted). "If . . . the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object — i.e., if 'its incriminating character [is not] "immediately apparent,"' — the plain-view doctrine cannot justify its seizure." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). And if the consent does not authorize such an intrusion, the police may not disturb or further investigate an item to discern its evidentiary value without probable cause. Arizona v. Hicks, 480 U.S. 321, 322, 324-26 (1987) (plain view doctrine could not justify seizure of stereo components where police lacked probable cause to believe the components were stolen until after disturbing them).

**C. Application of the Law to the Facts**

In this case, Defendant initially gave oral consent to Officer Henao to search the residence. Considered in context, the undersigned concludes that the request for oral consent was for limited purposes and objects. In particular, Officer Henao included

6

limiting language in his request for consent - he asked for consent to search "to make sure there was nothing illegal in the house, no weapons, drugs or currency or anything that will harm any of the officers . . . present . . . ." (T. 11). Reading this language in context and in its totality, a reasonable person would understand that this was a limited consent.

Although a written consent form was signed immediately after the oral consent that provided consent to search the residence address without limitation, the later written consent should be taken in the context of the oral consent already given and construed consistently with that prior consent. The officer should not have believed that the scope of the consent to search was broader than what Defendant had agreed to orally - namely, for certain delineated purposes and objects. And it bears noting that neither the oral nor the written consent provided for the right to seize anything.

After obtaining both consents, the officers searched the residence. A drug dog was brought in. Eleven officers were present. (T. 18). Specifically at issue on this motion is the propriety of the seizure of cell phones and other documents, including a small spiral notebook that belonged to Defendant. (T. 23). A copy of the documents, including the notebook, was submitted to the Court after the hearing in connection with the motion. See Gov't Ex. 3.

The seized items at issue here should in my opinion be suppressed. First, as discussed above, the consent to search was for a limited purpose and object, thus limiting the scope of consent. Specifically, the consent to search was sustained for specific purpose: "to make sure nothing illegal was in the house, no weapons, drugs or currency or anything that will harm any of the officers that were present." To that end, the officers were authorized to, and apparently did make a comprehensive search for drugs, and presumably currency, and anything that might pose a danger to them, or anything that they might have reason to believe was "illegal." The officers were not granted broader authorization by the Defendant to search for or to seize any items that might possibly be evidence of drug dealing or money laundering. There was no authorization by the consent to search for or to seize cell phones or documents.

Nor did the fact that the Defendant was present in the house while the search was being conducted expand the scope of the consent. In United States v. Degaule, 797 F. Supp. 2d 1332 (N.D. Ga. 2011), cited by the government, the Court found that the scope of Defendant's general consent to search included a search for documents, and not just drugs, based both upon the terms of the request for consent and by the fact that Defendant was present during the search and was allowed to move about the residence and observe the officers as they searched. Degaule, 797 F. Supp. 2d at

8

1376. The Court in Degaule stressed that Defendant was cooperating in the investigation, assisted the officer in finding documents, and was advised that, if he wanted to change his mind and withdraw his consent, he could do so. Id.

Degaule is distinguishable. In the instant case, there is no evidence that Defendant was present and able to observe the search as it progressed.[4] Nor is there any evidence Defendant was advised she could change her mind and withdraw her consent. Nor is there evidence that Defendant was advised during the search that the agents were looking for evidence of drug dealing and money laundering or that the investigation was "very document intensive," as was told to Degaule during the searches of his property. In the instant case, the request for consent, as discussed above, was more limited.

But even if the scope of the consent to search could be viewed as validly encompassing a search for cell phones, notebooks, and documents, neither of the consents authorized a search of the contents of the cell phones or the contents of the notebooks and documents or the seizure of the cell phones or documents. Therefore,

---

[4] There is evidence that the officers found a small safe and asked Defendant about it and she told them they could do whatever they wanted with it. (T. 16). There is no evidence that the officers asked Defendant if they could read through her notebooks and papers and seize them as possible evidence.

9

if the officers indeed discovered actual contraband,[5] or anything arguably "illegal," such as weapons, "drugs, or currency,"[6] for example, then their authority to seize these items would have to come from some source other than the consents.

In this case, the plain view doctrine could have provided authority for seizure of the items, if its terms were met. Applying this doctrine, it would appear that the first element was met – the officers were lawfully located in the place from which the seized items could be viewed and the officers had a lawful right of access to the objects themselves. Horton, 496 U.S. at 136-37. The second requirement, however, presents a problem for the government. The incriminating character of the items must have been "immediately apparent."

I cannot conclude that the incriminating character of the cell phones or the notebooks and paperwork would have been immediately apparent to the officers. Even if these items *might* have had

---

[5] The government makes the blanket statement that "[i]n a drug and money-laundering case, documents, cellular telephones, and ledgers relating to the conduct are contraband." Gov't Brief at 7. To the contrary, however, contraband is defined as "goods that are unlawful to import, export, produce, or possess." Black's Law Dictionary, Ninth ed. 2009. Neither the documents, cell phones, nor ledgers seized in this case were contraband per se, nor were such items "illegal."

[6] The government has not argued how the mere presence of currency in the house, if currency had been found, could be considered to be on its face "illegal," justifying its seizure.

10

evidentiary significance in a drug or money-laundering prosecution, any such significance could not have been ascertained without a search of the contents of the cell phones and a review of the content of the notebooks and documents, neither of which in my view was authorized by the consents to search the house. The government made no attempt to demonstrate how the incriminating character of the cell phones or the documents that were seized was immediately apparent to the officers on the scene. Therefore, the officers had no authority to seize these items under the plain view doctrine, and I can ascertain no other basis for seizure of these items without a warrant.

Accordingly, the undersigned finds that the scope of the consents to search was limited and that neither consent authorized seizure of the items at issue. Neither did the plain view doctrine provide an independent basis for seizure. Therefore, the motion to suppress, [Doc. 341], should be **GRANTED**.[7]

**SO REPORTED AND RECOMMENDED,** this 10th day of July, 2012.

s/ *E. Clayton Scofield*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

---

[7] The motions pending at [Doc. 339] and [Doc. 340] should also be reflected on the docket as **DENIED as ABANDONED** [Doc. 339] and **DENIED as MOOT** [Doc. 340], respectively. See n.1, supra.

11